ORIGINAL

FILED
JUL 11 2007
U.S. COURT OF FEDERAL CLAIMS

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| Superior Helicopter LLC<br>2794 Foothill Blvd.<br>Grants Pass, Oregon 97526<br><br>and<br><br>Rainier Heli-Lift, Inc.<br>12515 Willows Road NE, Suite 125<br>Kirkland, Washington 98034,<br><br>Plaintiffs<br>v.<br><br>United States of America,<br><br>Defendant. | 07-518 C<br><br>No. |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' APPLICATION FOR A TEMPORARY RESTRAINING ORDER AND MOTION FOR A PRELIMINARY INJUNCTION**

Gilbert J. Ginsburg
Attorney of Record for Plaintiffs
1250 24th St., N.W.
Suite 350
Washington, D.C. 20037
Phone: (202) 776-7772
Fax: (202) 776-7773

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES .......... iii

PROCEDURAL BACKGROUND .......... 1

STANDARD OF REVIEW .......... 3

I. The Legal Standard Under The Administrative Procedure Act .......... 3

II. The Legal Standard For Injunctive Relief .......... 5

ANALYSIS .......... 6

I. There Is A Reasonable Likelihood That Plaintiffs Will Prevail On The Merits .......... 6

II. Plaintiffs Will Be Irreparably Harmed If Injunctive Relief Is Denied .......... 10

III. The Balance Of The Hardships On The Parties Favors Plaintiffs .......... 12

IV. Injunctive Relief Will Service The Public Interest .......... 12

CONCLUSION .......... 13

# TABLE OF AUTHORITIES

Cases — Page

*Automation Technologies, Inc. v. United States*, 72 Fed.Cl. 723 (2006) .......... 9

*Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 415, 81 S.Ct. 814 (1971) .......... 4

*DTH Management Group v. Kelso*, 844 F.Supp. 251 (E.D.N.C. 1993) .......... 11

*FMS Corp. v. United States*, 3 F.3d 424 (Fed. Cir. 1993) .......... 5

*IMS Services, Inc. v. United States*, 33 Fed.Cl. 167 (1995) .......... 5

*Isratex, Inc. v. United States*, 25 Cl.Ct. 223 (1992) .......... 6, 11

*Keco Industries, Inc. v. United States*, 492 F.2d 1200 (Ct.Cl. 1974) .......... 4

*Lear Siegler, Inc. v. Lehman*, 842 F.2d 1102 (9th Cir. 1988), *mod. on other grounds*, 893 F.2d 205 (9th Cir. 1989) .......... 11

*Magellan Corp. v. United States*, 27 Fed.Cl. 446 (1993) .......... 11

*Marsh v. Oregon Natural Resources Council*, 490 U.S. 360, 109 S.Ct. 1851 (1989) .......... 5

*Motor Vehicle Manufacturers Ass'n v. State Farm Mutual Automobile Insurance Co.*, 5 463 U.S. 29, 103 S.Ct. 2856 (1983) .......... 5

*Overstreet Elec. Co., Inc. v. United States*, 47 Fed.Cl. 728 (2000) .......... 4, 5, 11

*PGBA LLC v. United States*, 57 Fed.Cl. 655 (2003) .......... 11

*Reilly's Wholesale Produce v. United States*, 73 Fed.Cl. 705 (2006) .......... 7, 9, 10, 12, 13

*Seattle Sec. Servs., Inc. v. United States*, 45 Fed.Cl. 560 (2000) .......... 11

*Standard Havens Prods., Inc. v. Gencor Indus.*, 897 F.2d 511 (Fed. Cir. 1990) .......... 6

*United Int'l Investigative Servs., Inc. v. United States*, 41 Fed.Cl. 318 (1998) .......... 4, 11

Statutes

5 U.S.C. § 701 .......... 1

5 U.S.C. § 706(2) .......... 4

Statutes (cont.) Page

28 U.S.C. § 1491(b) ........................................ 3

31 U.S.C. § 3553 ........................................ 1

## PROCEDURAL BACKGROUND

This suit, brought by Superior Helicopter LLC ("Superior") and Rainier Heli-Lift, Inc. ("Rainier"), arises under the U.S. Forest Service's ("USFS" or "Agency") Request For Proposals No. AG-024B-S-07-0008 (the "RFP"). Plaintiffs seek injunctive and declaratory relief under the Administrative Procedure Act, 5 U.S.C. § 701 *et seq.*, with respect to the Agency's issuance of a determination and findings ("D&F") to override the automatic stay of contract performance that was invoked pursuant to the Competition in Contracting Act ("CICA"), 31 U.S.C. § 3553(d), as a result of timely protests filed by Superior and Rainier at the U.S. Government Accountability Office ("GAO"). The Agency's D&F is not adequately justified and is contrary to applicable law. Plaintiffs respectfully request that the USFS be enjoined from overriding the CICA automatic stay until such time as the GAO issues its decisions on Plaintiffs' protests.

The RFP was issued on April 6, 2007 and instructed offerors to submit technical and business/price proposals in response to the USFS's requirements for heavy and medium helicopter services. The RFP's schedule contained 35 line items, each covering specified National Forest locations. The RFP contemplated the award of multiple "exclusive use" contracts for a one-year-base period and two one-year option periods during which the successful contractors would be required to have the offered helicopters available for the USFS's exclusive use for 90-day, 150-day or 180-day durations.

Superior and Rainier, both experienced contractors in the helicopter firefighting industry, submitted proposals in response to the RFP by the May 10, 2007 due date. Superior and Rainier, as well as other offerors, proposed Kmax helicopters manufactured by Kaman Aerospace. Superior's and Rainier's Kmax helicopters are currently used for fighting fires

under "call when needed" ("CWN") contracts awarded by the USFS. The CWN contracts are in effect until April 30, 2008.

On June 13, 2007, the USFS sent letters to both Superior and Rainier notifying them that their proposals had been rejected on the basis that Superior and Rainier incorrectly used the standard Rotorcraft Flight Manual charts, rather than the K-1200 Rotorcraft Flight Manual Supplement #1 charts, to compute the Interagency Helicopter Load Calculation. Superior was also informed that its equipment lists did not conform to the RFP requirements. Since Superior and Rainier were also provided with a list of the winning contractors, they were able to determine that, but for the rejection of their proposals, Superior would be in line for at least two awards and Rainier would be in line for at least one award.

On June 25, 2007, Superior and Rainier representatives attended the requested and required debriefing at the National Interagency Fire Center ("NIFC") in Boise, Idaho. During the debriefing, Superior's Director of Aviation Operations, Mr. Andrew Mills, the lead spokesman for the Plaintiffs, detailed the reasons that their use of the standard charts was correct and demonstrated to the USFS officials that, in any event, the helicopter load calculations were correct using either the standard charts or the Supplement #1 charts. The USFS's national Helicopter Aviation Specialist, Mr. Chuck Taylor, confirmed that Mr. Mills' demonstration was "probably correct." In response to Mr. Mills' query as to what was wrong with Superior's equipment lists, Mr. John Grogan, a Helicopter Maintenance Specialist who was involved in the evaluation of the proposed equipment lists, stated that Superior might well have put all the correct information in its proposal. Mr. Grogan added that he "was not willing to say the [Superior] proposal was deficient." Then the Contracting Officer, Mr. Gomez, stepped in and gave the issue closure, by saying that Superior's proposal was <u>not</u> rejected for an

equipment list problem; the equipment list was only mentioned in the June 13th letter "for clarification."

On June 29, 2007, Superior and Rainier filed protests at the GAO against the USFS's rejection of their proposals. Although the protests were filed within the necessary time frame to invoke the CICA automatic stay provisions, a stay of performance was already in effect due to the filing on June 22, 2007 of a timely protest by Erickson Air-Crane, Inc., another disappointed offeror on the subject procurement.

On July 9, 2007, Plaintiffs learned that the USFS had executed a D&F to override the automatic stay. According to the D&F, the USFS has determined that performance of the awarded contracts is in the best interests of the United States and urgent and compelling circumstances that significantly affect interests of the United States will not permit waiting for the decision of the Comptroller General concerning the protests.

The USFS can obtain helicopter services needed for firefighting purposes at all National Forest locations during the pendency of the GAO protests through the existing call-when-needed ("CWN") contracts held by Plaintiffs and most of the other helicopter operators. *See* Affidavits of Andrew Mills ("Mills Affidavit") and Richard L. Larew ("Larew Affidavit"), attached to Plaintiffs' Complaint. Therefore, the USFS cannot properly justify a "best interests" or "urgent and compelling" override of the automatic stay.

## STANDARD OF REVIEW

This Court has jurisdiction to hear bid protests under the Administrative Dispute Resolution Act of 1996. 28 U.S.C. § 1491(b)(1).

### I. The Legal Standard Under Administrative Procedure Act

The Administrative Procedure Act ("APA") provides the appropriate standard of review for bid protest cases. Specifically, the APA provides:

> The reviewing court shall…(2) hold unlawful and set aside agency action, findings, and conclusions found to be – (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law….

5 U.S.C. § 706(2).

The Court in *Keco Industries, Inc. v. United States* further refined the APA analysis by establishing four factors to be considered when determining whether the government has acted arbitrarily or capriciously toward a claimant:

1. whether there was subjective bad faith on the part of the procuring officials, thus depriving the bidder of fair and honest consideration of its proposal;

2. whether there was a reasonable basis for the government's decision;

3. the degree of discretion given to the procurement officials by applicable statutes and regulations, which determines the degree of proof of error necessary to demonstrate a right to recovery; and,

4. whether government officials violated pertinent statutes or regulations, which, if violated, may form the basis for recovery, but which need not automatically constitute grounds for such recovery.

492 F.2d 1200, 1203 (Ct.Cl. 1974).

When this Court reviews agency action under the APA, it must perform a "thorough, probing in-depth review" to determine "whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *United Int'l Investigative Servs., Inc. v. United States*, 41 Fed.Cl. 318-19 (1998) (*quoting Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 415-16, 81 S.Ct. 814 (1971)). While deferential, the arbitrary and capricious standard "is not a rubber stamp." *Overstreet Elec. Co., Inc. v. United States*, 47 Fed.Cl. 728, 742 (2000). Moreover, it does not require the Court "to accept, in a Kierkegaardian leap of faith, bald assertions on a critical point that are not otherwise tied to the administrative

record and that are at least in tension with, if not contradicted by, various aspects of that record." *Id.* Indeed, to the contrary, the Supreme Court has stated that, under the arbitrary and capricious standard, "the agency must examine the relevant data and articulate a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made." *Motor Vehicle Manufacturers Ass'n v. State Farm Mutual Automobile Insurance Co.*, 463 U.S. 29, 43, 103 S.Ct. 2856 (1983).

Thus, only by "carefully reviewing the record and satisfying [itself] that the agency has made a reasoned decision" can a court "ensure that agency decisions are founded on a reasoned evaluation of the relevant factors." *Marsh v. Oregon Natural Resources Council*, 490 U.S. 360, 378, 109 S.Ct. 1851 (1989); *Overstreet*, 47 Fed.Cl. at 742.

## II. <u>The Legal Standard For Injunctive Relief</u>

The Court of Federal Claims will grant injunctive relief when the plaintiff establishes that the following elements weigh in its favor:

1. Whether there is a reasonable likelihood that the plaintiff will prevail on the merits;

2. Whether injunctive relief will not be contrary to the public interest;

3. Whether the plaintiff will suffer irreparable harm if preliminary relief is not granted, and cannot obtain adequate relief at law if the injunction is not granted; and

4. That the balance of hardships on plaintiff and defendant tips in the movant's favor.

*IMS Services, Inc. v. United States*, 33 Fed.Cl. 167, 178 (1995).

No one factor, taken individually, is necessarily dispositive. *FMC Corp. v. United States*, 3 F.3d 424, 427 (Fed.Cir. 1993). When a preliminary injunction is granted by the trial court, the weakness of the showing regarding one factor may be overborne by the strength of the others. *Id.* A plaintiff need not establish entitlement to preliminary injunctive relief by clear and

convincing evidence; rather, proof of a strong likelihood of success on the merits is all that is required. *Isratex, Inc. v. United States*, 25 Cl.Ct. 223, 227 (1992). Moreover, if harm to the injunction applicant is sufficiently serious, it is only necessary that there be a "fair chance of success on the merits." *Standard Havens Prods., Inc. v. Gencor Indus.*, 897 F.2d 511, 512-13 (Fed.Cir. 1990). As established below, Plaintiffs have satisfied their burden of proof with respect to all four elements of injunctive relief.

## ANALYSIS

### I. There Is A Reasonable Likelihood That Plaintiffs Will Prevail On The Merits

Plaintiffs are likely to prevail on the merits because the USFS may obtain helicopter firefighting services, when and where needed, under the existing CWN contracts held by Superior, Rainier, and most other helicopter operators. The CWN contracts do not expire until April 30, 2008, many months after the GAO must issue its decisions on Plaintiffs' protests. The USFS contends that the CWN contracts do not afford adequate firefighting coverage and that only moving forward with the new Exclusive Use contracts will provide the amount of firefighting support the agency requires.

In truth, the USFS has all the support it needs available through existing CWN contracts, and the statistics and arguments set forth in the D&F cannot withstand serious scrutiny. Because of the relatively short firefighting season and the lucrative nature of the CWN arrangements, companies like Superior and Rainier are actually hoping to secure CWN assignments, and they devise their business strategies around that possibility. Moreover, because of the way these companies deploy their assets, there will be little, if any, delay or lag time between the time a CWN helicopter is requested by the USFS and the helicopter's arrival at the fire site. The USFS has a computerized data bank at the NIFC in Boise, Idaho that contains CWN contractor names and the locations and serial numbers of nearly 200 helicopters that are

available on a CWN basis. All of the available helicopters are equipped with a Global Positioning System, which is contractually required by the USFS, and the USFS is able to pinpoint the location of every aircraft at all times. With this data, the USFS can immediately deploy the closest assets to the location of a fire. *See* Mills Affidavit, ¶ 12; Larew Affidavit, ¶ 7. Although the CWN contractors are not required to dedicate their helicopters solely to servicing the USFS's requirements – as is the case under USFS exclusive use contracts – and the CWN contractors may decline a USFS order for a helicopter that is being used for other purposes, the USFS's mission has not been jeopardized by delays or lag time in deploying aircraft for firefighting purposes due to the nature of the CWN contracts and their location in all the areas of high risk of fire. Indeed, CWN helicopters frequently reach the fire location even before the assigned USFS project manager arrives. *See* Larew Affidavit, ¶ 8. Thus, there exists no legitimate basis for the USFS's position that the existing CWN contracts cannot provide adequate coverage during the current fire season.

In a recent decision involving a challenge to a CICA override, this Court delineated a list of factors that an agency must consider in making a CICA override determination. *Reilly's Wholesale Produce v. United States*, 73 Fed. Cl. 705 (2006). These factors are as follows:

(i) whether significant adverse consequences will necessarily occur if the stay is not overridden;

(ii) conversely, whether reasonable alternatives to the override exist that would adequately address the circumstances presented;

(iii) how the potential cost of proceeding with the override, including the costs associated with the potential that the GAO might sustain the protest, compare to the benefits associated with the approach being considered for addressing the agency's needs; and

> (iv) the impact of the override on competition and the integrity of the procurement system, as reflected in the Competition in Contracting Act.

*Id.* at 711. The USFS's D&F attempts to paint a picture of a very bleak outcome if the stay is not lifted, one which would leave the agency woefully short of the assets necessary to deal with the current and expected fires this season. But the statistics cited in the D&F are misleading. As made clear in the affidavits of Messrs. Mills and Larew, the existing CWN contracts actually provide the USFS with instant access to 60 heavy lift and medium-lift helicopters and over 200 helicopters in total. *See* Mills Affidavit, ¶13(a) and (b); Larew Affidavit, ¶ 8(a) and (b). All of these have been inspected and approved by the USFS, and many of them are currently fighting fires. *See* Mills Affidavit, ¶¶ 10 and 14; Larew Affidavit, ¶¶ 9 and 11. Moreover, the USFS has the mechanisms in place to move these assets at will, something that is conveniently not discussed in the D&F. *See* Mills Affidavit, ¶13; Larew Affidavit, ¶ 8. Indeed, the agency's discussion of available alternatives to an override must be dismissed because of this glaring omission. In short, the CWN contracts provide the USFS ready access to helicopters for firefighting purposes when and where they are needed. The USFS cannot legitimately claim that "significant adverse consequences will necessarily occur if the stay is not overridden" because multiple helicopter operators, including Superior and Rainier, stand willing and able to immediately respond to USFS firefighting requirements under their CWN contracts and are currently fighting the fires. The concern that forest fires will rage out of control while the USFS awaits a response from a CWN contractor is illusory at best. *See* Mills Affidavit, ¶¶ 9-14; Larew Affidavit, ¶ 6-9.

Plaintiffs are aware of the USFS's stated preference for exclusive use contracts, and the Agency's intent to only utilize the CWN contracts when firefighting coverage cannot be adequately obtained under the exclusive use contracts. *See* Larew Affidavit, ¶ 10. In addition,

the exclusive use contracts are less costly than the CWN contracts. The fact that the exclusive use contracts are preferred by the USFS, however, is irrelevant to the Court's analysis of the CICA override determination. *Reilly's Wholesale Produce*, 73 Fed. Cl. at 711. Moreover, cost savings are generally an insufficient basis to support an agency override. *See Automation Technologies, Inc. v. United States*, 72 Fed. Cl. 723, 730 (2006).

With respect to the third criterion, the USFS's discussion of costs in the D&F, the agency contends that the only costs it might face are proposal preparation costs and protest costs, and, in the event that the protests are sustained, the USFS will not renew the contracts that have been awarded. In most cases, Plaintiffs would agree with the agency's position that such costs would not outweigh the inability to guarantee helicopter availability and therefore to prevent the loss of life and property; in this case, however, that conclusion represents a quantum leap in logic: you cannot reach that conclusion unless the premise is true, *i.e.*, that without the lifting of the stay the USFS will not have what it needs to fight fires this season. As the affidavits submitted by Plaintiffs make abundantly clear, that premise is false. The USFS has all it needs to fight fires this season, simply by utilizing the CWN contracts currently on the books. *See* Mills Affidavit, ¶¶ 9-14; Larew Affidavit, ¶¶6-9.

Finally, the D&F fails to discuss the impact that the override will have on the competition and on the integrity of the procurement process. Perhaps this is because the agency knows that lifting the stay will deprive the protesters of an opportunity to get the business they depend on in the very short U.S. firefighting season. That business will be history by the time the GAO decides the protests in October. These are businesses that invest significant sums of their own money to meet the USFS's ever-changing technical demands (*See*, Mills Affidavit, ¶¶ 12 and 16; Larew Affidavit, ¶ 13); that pre-position their aircraft so as to be able to respond to a CWN call when it comes in (*See*, Mills Affidavit, ¶ 13(b); Larew Affidavit, ¶

8(b)); that have a track record of providing top-notch performance under very dangerous conditions on a moment's notice, and are doing so today. (*See, Mills Affidavit,* ¶ *13(d); Larew Affidavit,* ¶ *11)* This kind of callous disregard on the part of a Government agency sends those businesses the wrong message, and could lead to a reduction in the number of qualified, experienced companies willing to work with such an unpredictable and arbitrary customer.

With respect to the integrity of the procurement process, the alleged technical inadequacies relied upon by the USFS in rejecting the plaintiffs' proposals simply cannot be supported. Agencies are required to abide by the terms set forth in the solicitations they publish. They are not permitted to reject proposals for failing to satisfy requirements that are not contained in the solicitation. Moreover, the agency's execution of a D&F that manipulates statistics and deliberately omits certain crucial facts also is a threat to the integrity of the procurement process. This Court must not permit such practices, and it must do what is necessary to ensure that the *status quo* is preserved while Plaintiffs seek a GAO ruling.

In sum, Plaintiffs are likely to succeed on the merits because the Agency's D&F fails to describe the agency's actual ability to use CWN contracts to meet all of its firefighting needs this season. The statistics used to support the agency's conclusions simply cannot survive scrutiny. The fact is that the USFS has nearly 200 qualified aircraft available under its CWN contracts, including all the helicopters it has selected for the Exclusive Use contracts, and a mechanism to ensure that all of its demands can be met. There is no need whatsoever to move forward with the Exclusive Use contracts before the protests are decided by GAO.

## II. Plaintiffs Will Be Irreparably Harmed If Injunctive Relief Is Denied

When assessing irreparable injury, "[t]he relevant inquiry in weighing this factor is whether plaintiff has an adequate remedy in the absence of an injunction." *Reilly's Wholesale*

*Produce*, 73 Fed. Cl. At 716-17 (quoting *Magellan Corp. v. United States*, 27 Fed. Cl. 446, 447 (1993)). As stated further by the Court:

> This court has acknowledged that a lost opportunity to compete may constitute an irreparable harm, *PGBA [LLC v. United States]*, 57 Fed. Cl. [655], at 664 [2003]; *Overstreet Elec. Co.*, 47 Fed. Cl. At 744; *Seattle Sec. Servs., Inc. v. United States*, 45 Fed. Cl. 560, 571 (2000), and, in the court's view, the injury claimed by plaintiff is similar. Indeed, Congress enacted the automatic stay on the premise that the failure of an agency to stay performance could result in a competitive disadvantage that might not be remedied, causing a contractor to lose an important business opportunity. *See, e.g., Lear Siegler, Inc. v. Lehman*, 842 F.2d 1102, 1105 (9th Cir. 1988), *mod. on other grounds*, 893 F.2d 205 (9th Cir. 1989); *PGBA*, 57 Fed. Cl. At 664; *DTH Management Group [v. Kelso]*, 844 F.Supp. [251] at 254-55 [E.D.N.C. 1993].

*Id.* at 717.

In the absence of injunctive relief, Plaintiffs will be severely disadvantaged because the successful exclusive use contractors will be deployed during the current fire season and Plaintiffs will have been deprived of the opportunity to compete in a fair competitive bidding process and to secure the resulting profit from those contracts that Superior and Rainier would have received but for the Agency's improper rejection of their proposals. *See, e.g., United Int'l Investigative Servs., Inc. v. United States*, 41 Fed. Cl. 312, 323 (1998). Plaintiffs will not receive comparable profits from their existing CWN contracts because the USFS has stated its intent to utilize the exclusive use contracts for the Agency's firefighting needs, and to only use the CWN contracts as a last resort. *See* Mills Affidavit, ¶¶ 14-15; Larew Affidavit, ¶¶ 9-10. Moreover, Plaintiffs lack an adequate remedy at law as "an action at law would allow plaintiff to recoup only bid preparation costs." *Isratex, Inc. v. United States*, 25 Cl. Ct. 223, 231 (1992). The Agency recognizes this fact. See Agency D&F, para. 13.

representing the best overall value. Thus, as in the *Reilly's Wholesale Produce* case and given the fact that the USFS's firefighting mission will not be impaired by reinstituting the stay, the public interest is best served by the Court's issuance of the requested injunction.

## CONCLUSION

For all of the reasons stated above, Plaintiffs respectfully request that this Court grant their Application For A Temporary Restraining Order and their Motion For A Preliminary Injunction.

Respectfully submitted,

Gilbert J. Ginsburg
Attorney for
the Plaintiffs
1250 24th Street, NW
Suite 350
Washington, DC 20037
Phone: (202) 776-7772
Fax: (202) 776-7773
Email: gilgins@aol.com

Of Counsel:

Timothy Sullivan

Katherine S. Nucci

Thompson Coburn LLP
1909 K Street, N.W. Suite 600
Washington, D.C. 20006-1167
www.thompsoncoburn.com
P: 202.585.6930
F: 202.508.1028
M: 703.508.1156

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

Superior Helicopter LLC
2794 Foothill Blvd.
Grants Pass, Oregon 97526

and

Rainier Heli-Lift, Inc.
12515 Willows Road NE, Suite 125
Kirkland, Washington 98034,

Plaintiffs

v.

United States of America,

Defendant.

No. ________________

**PLAINTIFF'S STATEMENT OF COMPLIANCE WITH PRE-FILING NOTIFICATION REQUIREMENTS**

On Friday, June 29, 2007, the undersigned attorney of record spoke with Mr. John J. Todor, an attorney in the Civil Division of the Department of Justice, and I advised him of my intent to file a request for injunctive relief on Monday, July 2, 2007, in this Court. To the best of my knowledge, Mr. Todor has advised the contracting agency of our intentions in this regard. I also sent a letter on that same date to Mr. Brian Bishop, the Clerk of this Court, advising Mr. Bishop of our intention to file. I provided both Mr. Todor and the Clerk with the name of the contracting agency, the name of the contracting officer, and the number of the relevant solicitation.

To the best of my knowledge, no awards have been made under the solicitation that underlies this action, and plaintiffs therefore are unable to notify any "apparently successful

offerors" as required by Section II(2)(d) of Appendix C of the Rules of the U.S. Court of Federal Claims.

Based on the above, plaintiffs believe they have complied with the requirements set forth in Appendix C of the Court's Rules.

Respectfully submitted,

By [signature]

Gilbert J. Ginsburg
Attorney of Record for Plaintiffs Superior Helicopter, LLC, and Rainier Heli-Lift, Inc.
1250 24th Street, N.W., Suite 350
Washington, D.C. 20037
202-776-7772
FAX 202-776-7773

Of Counsel:
Timothy Sullivan
Katherine S. Nucci
Thompson Coburn LLP
1909 K Street, N.W., Suite 600
Washington, D.C. 20006-1167
202.585.6900
202.585.6969 (facsimile)

**CERTIFICATE OF SERVICE**

I hereby certify under penalty of perjury that on this 10th day of July, 2007 one copy of the Motion for A Temporary Restraining Order and accompanying documents were hand delivered to:

John J. Todor, Esq.
U.S. Department of Justice
1100 L Street, NW
Washington, DC

Cheryl M. Coney

Cheryl Marie Coney