USDA United States Department of Agriculture
Office of the General Counsel
Washington, D.C. 20250-1400

July 9, 2007

**VIA FACSIMILE (202-512-9749)**

Jennifer Westfall-McGrail, Esq.
Procurement Law Control Group
Office of the General Counsel
U.S. General Accounting Office
441 G. Street, N.W.
Washington, DC 20548

RE: Protest of Erickson Air-Crane, Inc., B-299909
Protest of Superior Helicopter LLC, B-299909.2
Protest of Rainier Heli-Lift, Inc., B-299909.3

Dear Ms. Westfall-McGrail:

Enclosed are the findings and determinations of Abigail R. Kimbell, Chief, USDA Forest Service, with respect to the continued performance of Contract No. AG-024B-S-07-0008 in the face of the above-referenced bid protests.

Sincerely,

for Elin M. Dugan
General Law Division

cc: Gilbert J. Ginsburg, Counsel for Superior Helicopter LLC and Rainier Heli-Lift, Inc. (by fax 202-776-7773)
Alan Saltman, Counsel for Erickson Air-Crane, Inc. (by fax 202-775-8217)
Frank Gomez, USDA FS Contracting Officer (by fax 208-387- 5384)
John J. Todor, U.S. Department of Justice (by fax 202-307-0972)

**FINDINGS TO OVERRIDE THE AUTOMATIC STAY AND CONTINUE WORKING AFTER AWARD IN THE FACE OF A PROTEST**
**RFP AG-024B-S-07-0008 Heavy or Medium Helicopter Services**

**Background**

1. The U.S. Department of Agriculture (USDA), Forest Service (FS) issued a Request for Proposals (RFP) AG-024B-S-07-0008 Helicopter Services for 35 contract line items. These helicopter services are part of the National Aviation resources providing critical initial and extended attack capability in wildland fire suppression efforts.

The RFP AG-024B-S-07-0008 was issued on April 6, 2007. A formal pre-proposal conference was conducted on April 18, 2007 discussing in depth the requirements of the above referenced solicitation. Offers were received by close of business on May 10, 2007.

2. On June 13, 2007, successful offerors were notified that the Forest Service was proceeding with awards for 35 helicopters. Eighteen vendors were awarded contracts for 35 bases. On June 13 and 14, 2007, unsuccessful offerors were notified that awards would not be made to them.

**Bid Protests**

3. On June 22, 2007, Erickson Air-Crane, Inc., protested to the GAO the award of 18 of the 35 items awarded under this contract (B 299909). These 18 contract line items being protested are:

> 1) Cadillac/Ely/Jeffco, 2)Prescott/Coeur d'Alene, 3)Albuquerque/Helena, 4)Sierra Vista/Grangeville, 5) Cedar City, 6) Lucky Peak, 7) San Bernardino, 8) San Bernardino, 10) Hemet, 11) Casitas, 12) Van Nuys, 15) Ely/Jeffco, 16) Phoenix, 17) McCall, 19) Westover, 20)Orland, 22) Mariposa, 23) Santa Maria.

Erickson Air-Crane is not protesting the awards for the remaining 17 contract line items.

The basis of Erickson's protest is that their interpretation of the information required to be submitted in their proposal for evaluation of their aircraft was minor in nature and that the agency should have requested clarification. The information required to be submitted was defined in the solicitation and was required for proper technical aircraft evaluation. Specifically, information as to the aircraft weight and balance, equipment list and correct helicopter load calculation is essential for determining efficiency of the aircraft and were critical components of the source selection decision.

4. On June 29, 2007, Superior Helicopter LLC protested to the GAO the award of 34 of the 35 contract line items awarded under this contract (B 299909.2). The protest excludes contract line item 9 (Chuchupate). The basis of Superior's protest is the Government's determination that failure to use the manufacturer's rotorcraft flight manual supplement in calculating the hover out of ground effect (HOGE) payload and non-conformance of its equipment lists were not in compliance with the solicitation was unfounded and contrary to the RFP requirements. The information required to be

submitted was defined in the solicitation and was required for proper technical aircraft evaluation. Computation of the HOGE payload based on the manufacturer's rotorcraft flight manual is essential for determining efficiency of the aircraft and was a critical component of the source selection decision.

5. On June 29, 2007, Rainier Heli-Lift, Inc., protested to the GAO the award of 34 of the 35 contract line items awarded under this contract (B 299909.3). The protest excludes Item 9 (Chuchupate). The basis of Rainier's protest is the Government's determination that failure to use the manufacturer's rotorcraft flight manual supplement in calculating the hover out of ground effect (HOGE) payload were not in compliance with the solicitation was unfounded and contrary to the RFP requirements. The information required to be submitted was defined in the solicitation and was required for proper technical aircraft evaluation. Computation of the HOGE payload based on the manufacturer's rotorcraft flight manual is essential for determining efficiency of the aircraft and was a critical component of the source selection decision.

**Basis for Override of Automatic Stay**

6. The Competition in Contracting Act (CICA), 31 U.S.C. §§ 3551-3556, and the implementing regulations impose an automatic stay post award of a contract pending resolution of a protest for any protest filed within 10 days of contract award or five days after an award debriefing. 31 U.S.C. § 3553(d)(3)(C); 48 CFR 33.104(c). The Forest Service agrees that the CICA stay is in effect and contracts cannot continue until the HCA overrides the stay or resolution of the protest. Accordingly, the HCA will authorize performance of the contracts pursuant to 31 U.S.C. § 3553 (d)(3)(C)(i)(I) and (d)(3)(C)(i)(II), as explained below.

7. As cited in 31 U.S.C. § 3553(d)(3)(C) and 48 CFR 33.104(c), CICA provides that:

> The head of the procuring activity may authorize the performance of the contract (notwithstanding a protest of which the Federal agency has notice under this section) –
>
> (i) upon a written finding that –
>
> (I) performance of the contract is in the best interests of the United States; or
>
> (II) urgent and compelling circumstances that significantly affect the interests of the United States will not permit waiting for the decision of the Comptroller General concerning the protest; and
>
> (ii) after the Comptroller General is notified of that finding.

**Nature and Purpose of Contract**

8. It is critical that performance under the awarded contracts, specifically 34 of the 35 total contract line items contained in the solicitation, continue in the face of a protest. (Item 9 of the solicitation is specifically excluded from the protests.) The national helicopters are critical aviation resources needed for support of national fire suppression

efforts, specifically initial attack and large fire support. These 35 helicopters are contracted for the exclusive use of the Forest Service and its National Wildfire Coordinating Group partners in the Department of Interior and the National Association of State Foresters. These helicopters are part of a national contingent of resources and are moved wherever needed on federal and state jurisdictional fires.

9. Under exclusive use contracts, such as the one that is the subject of the protests, the contractor is obligated to provide and station a helicopter and crew during mandatory availability periods as defined in the contract. The contractor is paid a daily availability rate for that helicopter and crew during those mandatory availability periods; higher "flight rates" are paid when the helicopter is performing fire suppression missions.

10. In contrast, helicopters under Call-When-Needed (CWN) contracts may be ordered by the Government if a specific need for them exists; however, the contractor is not obligated to accept those orders and, often, they do not, because the helicopter is not available due to other commitments the contractor might have. There is no availability rate paid or other guarantee that the Government will order that helicopter, and no requirement for the contractor to accept any orders under CWN contracts

**2007 Fire Activity**

11. Significant fire potential in July is expected to be higher than normal over much of the West, western Great Lakes, the Ohio River and Tennessee Valleys, the central and southern Appalachians, and localized portions of southern Alaska. Fire potential in the West is expected to spread northward in August. Dryness of fuels in many western states is setting historic maximums. This will contribute to fire ignitions and spread from lightning and human sources. (National Interagency Coordination Center – Predictive Services – July 2, 2007.)

http://www.nifc.gov/nicc/predictive/outlooks/montlhly_seasonal_outlook.pdf

**Alternatives to the Stay Override**

12. The Forest Service considered alternatives to requesting an override of the automatic stay, which are listed below, but determined that those alternatives were not in the best interest of the United States. These 35 medium and heavy lift helicopters -- plus six other medium lift helicopters under exclusive use contracts -- comprise the national fleet of exclusive use medium and heavy lift helicopters. There are no other existing contracts for national medium and heavy lift helicopters that can be considered for extension beyond those mentioned in item a) below.

a) Extension of existing contracts: There are only 4 heavy lift helicopters currently under contract. These contracts are in the second and final option year of contracts awarded in 2005. The option for 2007 was exercised with a contingency that the renewal will terminate upon award of the contracts under the subject solicitation. These could be available for the remainder of the 2007, but would be the only four helicopters available. Four helicopters are an insufficient resource for this season's anticipated fire activity.

In addition to these 4 helicopters, there are 24 medium lift helicopters under exclusive use contracts in the FS regions. However, these helicopters are unavailable for use in the *national* fleet, because they are budgeted for and managed by the regions (as opposed to nationally) and they are reserved for use in local initial attacks. To use them as an alternative to the override would deplete local resources.

b) Substitution of CWN contracts for the exclusive use contract: The contingent of helicopters under current CWN contracts has been depleted, with vendors committing to work in the private sector and not having helicopters for guaranteed use by the Forest Service and its partners in firefighting efforts. In addition, these helicopters when ordered are funded by and directly support a single incident, and cannot be easily moved to different assignments as they are under the control of the incident commander for specific needs of that incident, and generally not available to meet a strategic objective supporting more than one incident. At the beginning of the 2006 season, there were over 241 helicopters under CWN contracts with the Forest Service for interagency use; only about 40% of them were available for firefighting use and the actual numbers fluctuated. The FS determined it was advantageous to offer a larger number of exclusive use contracts in 2007 to guarantee a consistent availability throughout the season at a lower cost than the typical CWN resource and to manage them strategically.

c) Bridge/interim contracts: Establishing another series of contracts to provide these helicopters in the interim would require a significant effort given the extent of competition available. Alternatively, it would require the award of multiple sole source contracts, based on a determination of urgent and compelling need under 41 U.S.C. 253(c)(2). Although the Forest Service believes that other than full and open competition would be justified under the circumstances, it would have the same effect as the stay override and is, therefore, not actually an "alternative" to the override.

The reason that the award of sole source, short-term bridge contracts would be the same as a stay override, is that the Forest Service already has narrowed the pool of competitors in this procurement by eliminating unacceptable proposals (including those of the protesters). The remaining, acceptable proposals are those of the awardees. Therefore, the Forest Service would simply be replacing this suspended contract with identical bridge contracts to the exact same contractors, pending GAO's decision. Not only would bridge contracts fail to accomplish the goals of CICA with respect to the automatic stay, but they also would result in a higher cost to the Forest Service (because they would be for a shorter duration), for the same services that are now stayed.

d) Use of planes or other resources in place of helicopters: If contract performance continues in the face of these protests, 35 heavy and medium lift helicopters will be exclusively available to firefighting agencies to support initial attack and large fires. Helicopters are particularly effective in missions that are highly repetitive over short distances with a greater degree of accuracy of water and retardant drops, particularly in the wildland urban interface. In addition, these helicopters are used to carry and deliver pumps, hoses and related equipment directly to the firefighters on the ground. Other fixed wing aircraft, such as single engine air tankers, can't match the accuracy in delivery of water and retardant drops as well as the equipment delivery that

these helicopters can provide, can't land at other than airports, and can generally only be used for a single purpose. Helicopters can operate anywhere that a safe helispot can be established, and can pump water into tanks or buckets out of any approved source of water such as rivers, lakes, etc. In large fire support, helicopters are an effective resource and their use allows the heavy fixed wing air tankers to be used more often and more effectively in initial attack assignments, preventing small fires from becoming large ones. The number of exclusive use helicopters was increased to help supplement the drop in the number of large air tankers in past years.

**Risks of Staying Performance v. Overriding Stay**

13. The Forest Service has considered the ramifications of the protest(s) being sustained by GAO after performance on the contract continues. If performance continues and the protest(s) are sustained, it is likely the FS will pay proposal preparation costs and the costs of pursuing the protest, possibly including attorneys' fees. In addition, the Forest Service would offer to not renew the contract and to conduct a new procurement for helicopters in the 2008 season and beyond. However, the significant risks that would result from not overriding the stay -- *i.e.*, the inability to guarantee helicopter availability and therefore to prevent loss of life and property -- outweigh the ramifications of any sustained bid protests.

14. If performance is not continued, the Forest Service and its interagency partners (including states) will not have 35 medium and heavy helicopters available for their exclusive use for initial attack and large fire support, that have been inspected, approved for use, and stationed at designated locations with pilots and crews ready to deploy at a moment's notice. While some of these helicopters might be available under the call-when-needed contracts, there is no guarantee that enough of them will be available and in a state of readiness to deploy at a moment's notice when they are most urgently needed.

**Determination**

15. As of the date of this determination, there are 15 wildfires over 500 acres in size in the United States. So far this year, there have been 47,779 fires burning over 1.9 million acres. Just last month, about 200 homes were destroyed in the Angora Fire at South Lake Tahoe. Based on the above findings, I have determined that continuation in the face of a protest is justified in the best interests of the United States and based on urgent and compelling circumstances and will protect the public interest by ensuring the guaranteed availability of helicopter resources at the national level in suppression of wildfires, in the height of the wildfire season, particularly in the wildland urban interface.

[signature] Date 7/9/07

for Abigail R. Kimbell, Chief, USDA Forest Service