IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| Superior Helicopter LLC<br>2794 Foothill Blvd.<br>Grants Pass, Oregon 97526<br><br>and<br><br>Rainier Heli-Lift, Inc.<br>12515 Willows Road NE, Suite 125<br>Kirkland, Washington 98034,<br><br>Plaintiffs<br>v.<br><br>United States of America,<br><br>Defendant. | No. 07-518C |

**CORRECTED INITIAL BRIEF OF PLAINTIFFS**
**SUPERIOR HELICOPTER, LLC AND RAINIER HELI-LIFT, INC.**

**INTRODUCTION**

This case involves Plaintiffs' challenge to the override of a stay issued by the U.S. Forest Service ("USFS") under the Competition in Contracting Act of 1984 in connection with awards made under the USFS's Solicitation No. AG-024B-S-07-0008 (the "solicitation" or the "RFP"). Plaintiffs, longtime USFS contractors, are both disappointed offerors under the solicitation. Plaintiffs filed timely protests at the Government Accountability Office ("GAO"), and those protests are scheduled to be decided no later than October 9, 2007.

On July 9, 2007, Mr. Hank Kashdan, signing "for" the Chief of the USFS, executed a Findings document in which he concluded that continuation of the challenged contracts in the

face of the protests "is justified in the best interests of the United States and based on urgent and compelling circumstances and will protect the public interest." Administrative Record ("AR"), Tab 2.

As Plaintiffs demonstrated in their initial pleadings and at the July 12, 2007 hearing on the application for a temporary restraining order ("TRO"), the Findings document manipulated certain critical data and conveniently ignored other important facts. Plaintiffs demonstrated that, in fact, all that the Findings document accomplishes is to transfer some of the aircraft resources from "Call When Needed" contracts to "Exclusive Use" contracts because the USFS believes the latter are preferable and more economical, but would not add a single helicopter to those aircraft resources.

## THE TRO HEARING AND THE COURT'S DECISION

In announcing its decision on the TRO in this case, the Court stated:

> Well, this is a close case on the two temporary restraining order applications. What the Court is going to do is deny the two applications for two reasons, and the first reason is that the Court doesn't have the administrative record before it. It this were a preliminary injunction request and the Court had the record before it and the record would essentially provide the factual basis that the Court has today, the Court would grant the preliminary injunction. It's that close.

Tr. 120. (Emphasis added.)

The Court expressed its reticence earlier to rule on the TRO without having the record before it.

Thus, early on in the hearing, the Court said:

> One thing that's always near and dear to the Court's heart when it's dealing with an early, a very early application for a temporary restraining order, and that is the fact that in a bid protest, and it doesn't make any difference whether it's a bid protest of an actual procurement award or decision or preaward situation or an override situation, when the Court does not have the administrative record before it, there is always a hesitation and a pause, and I say that just because I want you to know from the

> outset that that's always going to be in the back of the Court's mind.

And toward the end of the hearing, the Court addressed it again:

> The Court: Well, one of the problems here is that I don't have the administrative record before me.
>
> Mr. Todor: Right
>
> The Court: And the Court is always skittish when that happens.

Tr. 115-116.

The Court then discussed the "disingenuousness" on the Government's part in executing the automatic stay override:

> And one of the reasons is that there appears from what the Court knows to be an element of disinengenousness in the override, and that is the emphasis on the guarantee of resources. That might be so, but it also appears that the CWN contracts in effect provide a necessary resource that has worked every year up until now, including last year when there was an extraordinary fire season.
>
> It appears when I say disingenuousness, that emphasis on guarantee I don't think it's going to provide any more resources at all to the Forest Service. And there's the circumstance that it just appears to be a desire for the Forest Service to shift ground, to in essence draw more from the EU provision rather than the CWN provision, that that's driving it.

Tr. 120-121. (Emphasis supplied).

The Court thus agreed with Plaintiffs' observation in argument that:

> [a]ll of the operators who have been selected for exclusive-use contracts are in the CWN cadre, have CWN contracts and are available, and the Forest Service is not going to pick up a single additional contractor or helicopter by being allowed to go forward with the exclusive-use contracts.

Tr. 109. The Court's statement also agrees with Mr. Mills' testimony that

> the numbers wouldn't change one way or the other. It's just the difference of how the aircraft are contracted. The same number of aircraft are going to be out there.

Tr. 60.

The Court now has the administrative record before it and the phase of the case before the Court is now the preliminary and permanent injunctions ("the 65(a)(2) injunction hearing"). Tr. 123. Unless the new documents in the record have altered "the factual basis that the Court has today" (*i.e.*, at the time of the TRO hearing) then in the Court's words, "the Court would grant the preliminary injunction." Tr. 120.

## STANDARD OF REVIEW

The standard of review is as set forth in Plaintiffs' Memorandum of Points and Authorities in Support of Plaintiffs' Application for a TRO and Motion for Preliminary Injunction.

## THE ADMINISTRATIVE RECORD HAS NOT ALTERED THE FACTUAL BASIS FOR THE RELIEF REQUESTED THAT WAS BEFORE THE COURT AT THE TRO HEARING

Plaintiffs have carefully examined the record and the documents contained therein have not changed the factual basis before the Court at the TRO hearing. Of the voluminous (767) pages in the administrative record, most of it we have already seen. The three protests make up 281 pages; and the request for proposals (RFP) and the amendments to the RFP take up an additional 403 pages. Of the remaining 83 pages, eleven comprise the USFS's override findings and the USDA notice to GAO of the override enclosing a set of the findings. (The findings, of course, are in the record.) Another 61 pages are the various notices to proceed issued by the USFS to the awardees for the 35 bid items; these are simple routine notices. That leaves 14 pages of additional material that we had not seen before.

The 14 pages of new material are found at Tabs 3, 4, 5, 7 and 15. Tab 7 is a routine notice to awardees of this lawsuit and specifically the hearing on the TRO.

Tab 3 is the predicted fire outlook for the 2007 fire season, dated July 2, 2007. There is nothing startling there. Plaintiffs in their opening statement said:

> On behalf of Superior and Rainier, Your Honor, we take no issue with the Agency's, with the Forest Service's, assertion that the fire danger is serious and that helicopter services are urgently required and are needed.

Tr. 15. Plaintiffs went on in that same opening statement to state what the true issue is with regard to the need for the override:

> We do differ with regard to the need for an override of the stay in order to effectuate that result, and that is because the Forest Service for many years has relied substantially on call-when-needed contracts.
>
> And virtually every helicopter operator has a call-when-needed contract. And we will offer evidence that those are deemed very attractive contracts, and those are contracts that contractors more or less stand in line for with the hopes of having the opportunity to perform them and that there is no need to have to overlay the exclusive use contracts and put them in force now when all of the firefighting capability of the operators is available to the Forest Service now and will continue to be available and be attractive to the operators to continue.

Tr. 15. Nothing in Tab 3 is responsive to that issue, *i.e.*, why the USFS needs to immediately implement the exclusive use contracts in lieu of utilizing the CWN contracts until GAO can rule on the protests.

Tab 4 is a memo from the Assistant Director of Wildland Fire Operations to the Contracting Officer, requesting that he "continue operations of [the] helicopters awarded ... exclusive use [contracts]" because of the level of fire danger. However, as the evidence made clear (Tr. 53) and the Court has indicated (Tr. 121), the exclusive use contracts will not add a single helicopter to the mix and the Forest Service can use <u>any</u> of the helicopters it has under CWN contracts for initial attack. The Forest Service can and will position them near fires. Tr. 98. And many of the CWN helicopters are pre-positioned by the operators near the actual or

anticipated fires. Tr. 43. So, Tab 4 does not add anything by way of evidence on this issue which is at the heart of the override.

Tab 5 is a report, as of July 9th,, of helicopter "orders unable to fill". It shows that on that date apparently there was a perceived need for firefighting helicopters that was greater than the number of active helicopters then in use. We note, however, that there are several factors that affect filling resource orders. One significant fact is that every Type 1 standard or restricted (limited) category helicopter must be assigned a USFS helicopter manager, and often resource orders go unfilled not because aircraft are not available, but because USFS managers are not available. This happens fairly often when things get busy because the USFS does not seem to have enough trained and certified type 1 managers for multiple fire events. In that case, the resource order will be labeled "Unable to Fill", but not because there is not an aircraft ready for it. As the testimony at the August 8th hearing will show, this has happened multiple times to Superior and to other operators. Moreover, the addition of the exclusive use helicopter contracts would not make the order easier to fill, since that would not add any additional helicopters to those available.

Tab 15, the National Incident Information System Report of July 5, 2007, also does not deal with the key issue relating to the need for the override, since the existence of numerous fires and elevated fire danger at this time is a given (although that situation could change if and when the weather changes), and the fact remains that the exclusive use contracts will not add even a single helicopter to the cadre of the Forest Service's available resources.

## CONCLUSION

In sum, nothing in the administrative record supports the need for an override of the automatic stay which was put into effect until GAO could rule on the Superior and Rainier protests. The record before the Court provides the same factual basis for a preliminary (and

permanent) injunction as the Court had on the day of the TRO hearing. The Court indicated that in that case the Court would grant the injunction. Tr. 120. Plaintiffs respectfully request that the Court now grant the injunction requested by Plaintiffs to restrain the United States from overriding the automatic stay until GAO can decide Plaintiffs' protests.

**POSSIBLE CONSOLIDATION**

The Court asked the parties to address consolidation in their initial briefs. Plaintiffs in our case do not favor consolidation. We believe the issues involved in Plaintiffs' case are different enough from those in the Erickson case, in that the Forest Service's stated reasons for rejection of Erickson's proposal were quite different from the reason the Forest Service gave for rejecting Plaintiffs' proposals.

Respectfully submitted,

Gilbert J. Ginsburg
Attorney & Counselor-At-Law
1250 24th Street, NW
Suite 350
Washington, DC 20037
Phone: (202) 776-7772
Fax: (202) 776-7773
Email: gilgins@aol.com

Attorney of Record for Plaintiffs
Superior Helicopter LLC and
Rainier Heli-Lift, Inc.

Of Counsel:

Timothy Sullivan
Katherine S. Nucci

Thompson Coburn LLP
1909 K Street, N.W. Suite 600
Washington, D.C. 20006-1167
www.thompsoncoburn.com
P: 202.585.6930

F: 202.508.1028
M: 703.508.1156